Your Honor, I represent Michael Cernovich, and I am here because my client was following this case, is a journalist, and wished to report on it. And then when he saw that these judicial documents were sealed, thus denying his ability to do so, he sought intervention. Now, I find myself somewhat redundant now, because I see that the case is open. Mr. Giuffre wants everything open. That sounds good to us, so we only have Ms. Maxwell to overcome. Now, you asked during the last argument, what is it that we should tell the world? And I think we should tell the world that we have the most fair and just and open courts in the world, and come and see for yourself. But don't you think Ms. Maxwell should have a chance to object to particular documents? Yes. I couldn't in any seriousness say that you can't do that. But when we have, you know, for example, a motion that gives us this, all black, and now I have this order from a judge here. And I didn't want to print it on one page, but it's just pages and pages of black. I mean, this — I might expect this from a FOIA request from the CIA, but I can't expect that in an open court where we have a longstanding common law right to access that predates the Constitution, and a First Amendment right to access that is even stronger than that. So I would say that what we should have here is an order that says that all the redactions in this court should be lifted, that the summary judgment order should be completely unredacted. Does Mr. Cernovich have to be a recognized journalist to make these requests, whether he is or is not? Just accept my question for what it is. Your Honor, I don't believe that there is any way that we can define recognized journalist. Right. So what if he's just an interested person? Does he have the same right as a journalist? Yes, Your Honor. I believe he does, because these courts belong to all of us. How would you describe him professionally? He's a — A freelance writer? You know, he started off as a law blogger. He has moved into doing journalism through Periscope and other new means. He's recently put out two films, one — including one called Hoaxed, that is talking about how the media doesn't give us the whole story of everything. So the fact that he doesn't write for, say, the Miami Herald or the New York Times makes him no less of a journalist. The Ninth Circuit had a good decision on this called Obsidian v. Cox, where they looked at — they said journalism is a thing you do, not a thing you are. Perhaps in some hypothetical world, a journalist license would be a neat thing, but we don't have that, Your Honor. So he doesn't have to prove credibility as a journalist in order to make these requests? Well, I think that would — maybe that would be a great idea, but then the New York Times would probably fail that. I mean, would Judith Miller before you today pass that test? We went to war because of her misreporting. So, no, I think that would be a very disturbing decision when it comes to the First Amendment, Your Honor. Do you think anyone off the street who's read a little bit about this case, in the Miami Herald, for instance, says, gee, I want to know more about this. I want to know what people did, what they did with these young girls. Could that person make a request? Yes, Your Honor. Precisely. I think you may be right. Yes. I think anybody. And, in fact, I was going to say any citizen, but even noncitizens. I mean, I handled a case where NML Capital was up against the Republic of Argentina, and a lot of that docket was sealed. And I represented a foreigner, somebody from Argentina, who wanted to see that case opened up because the people of Argentina wanted to know what was going on in our case. We know that case. Well, this one took place out in Las Vegas. So, in that case, you know, that ultimately was information that they also made the argument that since there was some talk about it being under protective order, they wouldn't have given this testimony otherwise. But that was as unavailing there as it should be here. What's the procedure that you would recommend to us? You've heard Mr. Borer's comments and the response to Mr. Borer's comments. Mechanically, how would you have us direct the district court to proceed? Well, Your Honor, I think upon first ordering that everything in this case be opened, that the clearly judicial documents be opened, I mean, at least the order and the summary judgment motions. But then whatever is left, I think Mr. Borer's procedure was a good one. I might suggest that it would be remanded to a random judge in the district, with all respect to Judge Sweet. I think it might not be. A special master, perhaps? Perhaps, yes. I don't think it would be fair to remand it to Judge Sweet, who may have, you know, after all this case has gone through, it seems like this case has been very contentious. There's a lot of vituperative pleadings in it. I think somebody who is unfamiliar with the record would actually be in a better position to make a measured decision on each and every document. And presumably the district court, whether it's Judge Sweet or any other judge, could appoint a magistrate judge to go through this document by document, or a special master. Is that right? As a First Amendment lawyer, that would make me very comfortable. Yes, Your Honor. All right. Thank you. Thank you. You've reserved two minutes. Cassell is up again. Good afternoon again. Paul Cassell again for Ms. Giuffre. You agree with Mr. Sarnovich, don't you? We agree that there should be broad unsealing of the record. There's no contention on this case between the two of you. Well, there is a concern. You asked how should we describe Mr. Sarnovich. We would describe him the way he described himself as a, quote, slut shamer, close quote. We would also describe him as a proxy or stand-in for Mr. Dershowitz. Dershowitz, as we're going to hear shortly, is bound by a protective order and cannot disclose documents. And there were never any factual findings. We made that allegation in the district court that the only reason Mr. Sarnovich showed up a few days after Mr. Dershowitz was unable to get some documents was that he was an ally of Mr. Dershowitz in acting as his stand-in. If we agree with what you describe Mr. Sarnovich as a slut shamer, whatever that is, if we agree, does that mean he's not entitled to the First Amendment protections? He's not entitled to operate as a slut shamer who is the cat's paw for Alan Dershowitz. What's the phrase? I don't quite. Slut shamer. S-L-U-T. Right. He believes that. J-A-M-B-E-R. Yeah. He believes that women cannot be raped and different things that are enumerated in our pleading. You would agree that every citizen has the right to access these documents, right? Certainly. Why do we have to go down this path of characterizing what he does or what he is? Well, in fact, in terms of going down the path, we believe there's no jurisdiction as this Court has asked us to brief in supplemental pleadings. Remember the order that's under review. I think it was described as Jouffre III. That's the order on May 2nd. And what does Judge Sweet say? At this time, let me just underscore that, I can't unseal the documents because I've got a jury selection process in three weeks. That is the order that Mr. Cernovich has in front of you. That's the definition of a provisional order. That's the definition of something over which collateral order review does not exist. There was not a conclusive determination that the documents would or would not be unsealed. And so this is a simple case we would submit. You say no jurisdiction, see Nozick versus Singer, provisional order. If you had been disappointed two or three weeks later, you should have gone back to Judge Sweet at that time. Remember, the briefs from Cernovich say, aha, there was never a need for a jury to be selected, so the order doesn't properly balance anything. That's, again, precisely the definition of a provisional order. At that point in time, May 2nd, there were, we would have agreed at that time, there were compelling reasons to keep the documents sealed rather than have them publicized and complicate jury selection process. But to go back to Judge Pooler's question earlier, at the very beginning of Mr. Randazza's remarks, it appears that you and Cernovich are in complete agreement that the whole record or as much of it as possible should be made public on the merits, forgetting the characterization of your respective clients. Yes. You're in agreement. Thank you. Can I just ask one question? Why weren't there any objections made during the course of this by your client? Because the blanket sealing order said anybody can object at any time. Why during this whole time didn't she say, well, you know, some of this or most of it should be unsealed? We were worried about jury selection. The protective order says this will all evaporate at trial, and she assumed that all the depositions were going to come in, all the witnesses were going to testify, and the factual record of how she was sexually trafficked would have been made available to the world at that time. But Ms. Maxwell chose to settle the case shortly before it went to trial. And that goes right to a point that Judge Cabranes was making earlier. There is no reliance interest. Somebody can't say, oh, we were relying on the protective order to keep this sealed. The protective order itself was going to evaporate at trial. And that's what Ms. Juffray understood was going to happen, that her story would have been told to the world when the trial happened. In fact, she shopped her memoir, didn't she, to publishers, thereby losing any secrecy attaching to it? I don't think that that's a long and complicated factual record. But she certainly had an opportunity to tell a few journalists portions of her story. I think that's fair. Thank you. Thank you. Thanks very much. Mr. Randazzo, you reserve two minutes. Yes, Your Honor. I would just say that, however, I find the characterization of Mr. Cernovich to be incorrect. I don't find any evidence for what his thoughts are. But I don't think it matters. We can bring, as Your Honor said, I think any person could come in off the street and say I'd like to see what's happening in this courtroom. Mr. Cernovich is not asking for these things for himself. He is not saying give them only to me. He's saying to show them to the world. So if you want to say that Mr. Cernovich is the worst guy in the whole world and he shouldn't get them, then maybe we could, I mean, that just sounds like it would be some kind of a strange finding that because a bad guy asked or a guy you don't like asked, we're going to set aside common law and the First Amendment. We don't need to ask why. When this is a fundamental right, you know, if we had a Third Amendment case in front of us, we wouldn't be asking why don't you want troops quartered in your house. It's because it's the Constitution. And that's that. And it applies to all of us. Thank you. All right. We'll reserve the decision on that. In this particular.